## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **LINDA GRAYSON** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | **No. 3:15-cv-00120** |
| **LEXINGTON INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| Defendants. | § | |
| | § | |

### PLAINTIFF LINDA GRAYSON'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF THIS COURT:**

**COMES NOW** Plaintiff, LINDA GRAYSON, and files this Amended Pleading pursuant to FED. R. CIV. P. 15 (a)(2) with the consent of the opposing party, Defendant, LEXINGTON INSURANCE COMPANY, and would respectfully show the Court as follows:

### I. INTRODUCTION

1. This case is about whether Plaintiff Linda Grayson should have been forced to gamble on the success of an experimental procedure to hopefully repair her fire-damaged home when her insurance coverage for like kind and quality dictated demolition and rebuild. The Plaintiff in this case filed suit against the Defendant Lexington Insurance Company on April 23, 2015 in the Galveston County state district court pursuant to the Texas Declaratory Judgment Act. The Defendant was served, answered and timely removed this action to this Court on May 20, 2015 alleging complete diversity between the parties and that the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. §1332(a), 1441(a) and 1446.

2.  Plaintiff now seeks leave to amend her complaint because more than 21 days have passed since Defendant removed this action.  The Defendant has consented to the amendment.

## II. PARTIES TO THE LAWSUIT

3.  Plaintiff, Linda Grayson is an individual residing in St. Louis, Missouri and is represented by A. Craig Eiland, 2211 The Strand, Suite 201, Galveston, Texas 77550.  Plaintiff's husband is David Grayson.   Mr. Grayson acted jointly with Mrs. Grayson to interact with Defendant during the repair of their home.

4.  Defendant Lexington Insurance Company (hereinafter referred to as "Defendant," or "Lexington") is a foreign insurance carrier, organized and existing under the laws of Delaware and authorized to conduct business in Texas, whose principal place of business is located at 99 High St, Floor 23, Boston, Massachusetts 02210-2378 and is represented by Jennifer Kearns of Thompson, Coe, Cousins & Irons, L.L.P., 701 Brazos, Suite 1500, Austin, TX 78701.

## III. JURISDICTION AND VENUE

5. The jurisdiction of the Court is invoked pursuant to this Court's diversity jurisdiction under 28 U.S.C. §1332(a), 1441(a) and 1446 to adjudicate the claims of citizens of different states in which the amount in controversy exceeds $75,000. The Plaintiff is a citizen and resident of the State of Missouri. The Defendant is a citizen of the states of Delaware and Massachusetts.

6.  Venue is proper in Galveston because the insured property is located in Galveston County, Texas. TEX. CIV. PRAC. & REM CODE § 15.032.

## IV. FACTUAL BACKGROUND

7.  Plaintiff is owner of a Homeowner's Insurance Policy (hereinafter referred to as "the Policy"), which was issued by Lexington.

8.  At the time relevant to this action, Plaintiff owned the insured property (hereinafter referred to as "the Property"), which is specifically located at 21912 Kennedy, Galveston, TX 77554, in Galveston County, Texas. The property is now held by a trust in Plaintiffs name and controlled jointly by Mrs. Linda Grayson and her husband David.

9.  Lexington sold the Policy insuring the Property to Plaintiff. The Policy Number is LE 7893894 06.

10.  In the afternoon of September 22, 2009, the Property was struck by lightning, causing the house to burn, and leaving behind extensive fire, smoke and water damage. The Galveston Fire Department used over 3000 gallons of water to extinguish the fire and had to drill holes in the floor of the home to allow this water to drain.

11.  The lightning strike was a covered cause of loss under the Policy.

12.  The relevant Policy limits were $370,000 for the dwelling, and $185,000 for contents of the dwelling.

13.  On September 23, 2009, Lexington assigned Cramer, Johnson, Wiggins & Associates (hereinafter, "CJW") as third-party administrator, J.S. Held, LLC as construction consultant and estimator for the dwelling, and Enservio to consult and estimate the loss of personal property.

14.  CJW assigned Edward "Ed" Grisham to act as local adjuster for the Graysons' claim.

15.  The Graysons hired Guffin Construction to estimate building repairs.

16.  About two months later, on November 25, 2009, Lexington received a report from CJW where it was notified that Guffin Construction's estimate for repair was $192,603 and J.S. Held's estimate was $163,026, and that CJW agreed with J.S. Held's estimate. Both of these estimates would be revised in the future.

17.  After a revision of J.S. Held's estimate, Lexington issued a check for undisputed loss

for the dwelling in the amount of $135,809 on December 29, 2009.

18. On January 27, 2010, CJW reported to Defendant that the Graysons' contractor "is disputing J.S. Held's findings. Guffin Construction has submitted their proposal in the amount of $326,302."

19. A conference call was scheduled between the Graysons, their contractor Guffin Construction, CJW, and Defendant's construction consultant J.S. Held. In an email dated February 19, 2010, CJW reported to Defendant that "[T]he insured and his contractor are concerned [the smoke] odor cannot be eliminated. Both the contractor and the insured have asked if testing can be performed to rule out odor. They have also inquired if there is another repair process that can be performed to eliminate odor. Mr. Grayson is concerned the house may be a total loss. I explained there is no testing process available."

20. During this conference call, a procedure called encapsulation was proposed to eliminate the odor of smoke left after the fire at the Property. According to CJW's email dated February 19, 2010, "The encapsulation process is an acceptable repair process for odor control."

21. After a March 12, 2010 visit to the property by Plaintiffs, CJW, Guffin Construction and an encapsulation specialist, Mr. Ed Grisham from CJW reported that:

> "The existing wall framing and floors can be sealed eliminating odor. If the floors are encapsulated the natural finish is lost. If a clear sealant is used then the stain will not adhere to the sealant. The insured is not willing to compromise and accept a laminate overlay. The insured and his contractor have expressed their concerns with the odor that may remain if the flooring underneath the wall framing is not replaced or sealed. The insured is demanding like kind and quality. Mr. Grayson is not willing to accept a compromised repair method. We contacted Mr. Dan Deimling of JS Held, Inc. and discussed the results of our inspection. He has not received the information from Mr. Grayson documenting upgrades in our initial estimate. Mr. Deimling was in the area on another assignment. He made contact with the insured's contractor and completed his own re-inspection. He contacted the insured and presented an alternative repair method (laminate floors). The insured once again rejected this approach."

22.  On multiple occasions after this meeting, Lexington, CJW and its other consultants attempted to "sell" the Graysons and their contractor on the idea of encapsulation as a solution to the problem of smoke odor.  The Graysons consistently refused this proposed fix unless some assurance was given about its effectiveness.  At one point, Mr. Grayson even proposed that he would accept Defendant's proposed fix as long as the materials and labor were bonded to allow recovery of the cost of rebuilding the home if the encapsulation procedure failed to restore the home to its pre-fire state.

23.  According to a note made April 26, 2010, Lexington called J.S. Held who advised that J.S. Held was:

> "looking for direction on how to write supplement, based on the following: 1) Insured does not want to encapsulate subfloor to prevent smoke smell unless some bond is taken out to cover the cost of tearing down house if his wife smells the smoke smell after encapsulating process. He wants a guarantee that it will work, or he will not agree to it. He wants to tear down the dwelling and wants the policy limits to rebuild completely. 2) **The adjuster and construction consultant both advise that the way this house was built they did not put in a finished floor - the subfloor of pine was the finished floor and was severely damaged by the fire. To replace the flooring with like kind and quality will require tearing down the building completely.  3) Adjuster and construction consultant recommend sanding, sealing (encapsulating) and then covering with a laminate floor or wood flooring throughout. Insured will not agree to this**...Construction Consultant advised that the tear down and rebuild will reach policy limits." [emphasis added]

24.  Defendant advised the Graysons that they refused to guarantee the encapsulation procedure and would not rebuild the home if the results are unsatisfactory.

25.  Again in a phone call on April 27, 2010 Mr. Grayson expressed his concerns to Defendant, pointing out:

> "1) There are structural problems with the building as a result of the fire. His contractor has worked on it but not satisfied. 2) The dwelling was power washed inside twice to remove smoke smell. After 30 day dry out

and two weeks later, the smoke smell was overpowering. 3) The dwelling, in insured's view should have been totaled from the start, and the Fire Marshall agreed with that assessment. 4) **He has been waiting since the end of September 2009, and all he has is a bare frame building at this point. 5) If the encapsulation fails, he is concerned with who will be liable…**" [emphasis added]

26. At the conclusion of this phone call, Defendant told Mr. Grayson that it would address his concerns with Nelson Architectural Engineers and would keep in touch with the Graysons on a weekly basis as their investigation continued.

27. Lexington hired Nelson Architectural Engineers to consult with them regarding structural damage to the home, repairing the floors and solving the problem of smoke odor. Nelson Architectural Engineers joined Mr. Grayson at the site of the dwelling on May 7, 2010. At this inspection, Mr. Grayson expressed his concerns about encapsulation, once again asking for a guarantee that encapsulation would resolve the smoke problem. Nelson Architectural Engineers reported to Lexington, recommending sanding and sealing the wood floor throughout the structure, all smoke and/or soot stained framing be sanded, cleaned and encapsulated, followed by deodorizing.

28. On May 26, 2010, Defendant contacted the Graysons and told them that J.S. Held would be revising its estimate to include replacing the floor in the kitchen only, sanding, encapsulating, and deodorizing the house.

29. On May 27, 2010, Defendant issued a payment of $19,139 to the Graysons which was based on J.S. Held's revised estimate.

30. On June 4, 2010, Defendant sent a letter to the Graysons invoking appraisal "in the event you disagree with our proposed settlement of this claim."

31. On July 6, 2010, Defendant and Mr. Grayson spoke by phone and Defendant explained the payments made so far. During the course of this conversation, Mr. Grayson expressed his

thought that J.S. Held's estimate for repair was incomplete, omitting a room entirely.

32. Later that same month, Mr. Grayson again expressed his concerns and disappointment with Defendant's plan to encapsulate the home with no assurance that the home would be restored to its pre-fire condition.

33. A note in the claim file from August 24, 2010 describes a phone conversation between Defendant and the Graysons' local insurance agent from the previous day where the agent, Sheri, told Defendant that the insured will not accept encapsulation as a repair.

34. On November 8, 2010, Defendant authorized and made another supplemental payment of $5,000 to cover demolition costs that were omitted from its previous estimates.

35. In 2011, after over a year of inspections and estimates and re-inspections and re-estimates, the Graysons were forced to make a choice: accept Defendant's proposed encapsulation fix with no assurance whatsoever that it would work, and risk wasting the approximately $190,000 Lexington had paid, or, take it upon themselves to restore their home to its original undamaged condition. Rather than gamble on an experimental procedure with no assurance of success and hundreds of thousands of dollars at risk, the Graysons hired and authorized Watson Architects and HomeLife Builders to rebuild their home.

36. On May 24, 2012, in response to a letter from counsel hired by the Graysons, Defendant requested appraisal "if your client does not agree with the settlement of this claim."

37. Later in 2012, the Graysons contacted Defendant in order to claim whatever remaining funds they could after the reconstruction of their home.

38. In Spring 2013, the Graysons opened their home for inspection by Lexington and provided invoicing for the completed repairs. Defendant reopened its file and, rather than paying for the full cost of completed repairs according to their obligations under the contract, issued a

check to the Graysons for recoverable depreciation holdback in the amount of $32,319 on May 8, 2013.

39. On November 5, 2014, the Graysons, through their attorney, demanded appraisal from Lexington Insurance. Repeated letters and emails went unanswered until March 2015.

40. The Graysons paid a total of $359,248 to repair their home properly.

41. Defendant has only paid a total of $227,521 to the Graysons.

## V. CAUSES OF ACTION

## COUNT 1—BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

42. Under the established common law and judicial precedent in the State of Texas, Defendant Lexington owes its insured a duty of good faith and fair dealing, due to the special relationship that exists between and insurance carrier and its insured.

43. An insurance carrier is liable for breaching its duty of good faith and fair dealing owed to its insured when it fails to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear, as Defendant has done in this case. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48 (Tex. 1997).

44. An insurance carrier may also violate its duty of good faith and fair dealing by refusing to pay a claim without conducting a reasonable investigation with respect to the claim, as Defendant has done in this case. *Id.*

44. As a result, Plaintiff has suffered economic and other damages due to the delay in payment of this claim and Lexington's failure to settle the claim fairly.

## COUNT 2—TEXAS INSURANCE CODE VIOLATIONS

45. Defendant's failure to attempt to effectuate a prompt, fair, and equitable settlement of

the Graysons' claim, with respect to which Defendant's obligation has become reasonably clear, and its failure to promptly pay the full policy limits of the Graysons' coverage, constitute violations of Texas Insurance Code §§ 541 & 542, *et seq.* Specifically:

    (a)   It is a violation of Chapter 541 for an insurer to engage in the following:

        (i)   Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

        (ii)   Undertaking to enforce a full and final release of a claim from a policyholder when only a partial payment has been made, unless the payment is a compromise settlement of a doubtful or disputed claim;

        (iii)   Misrepresenting an insurance policy making an untrue statement of material fact; failing to state a material fact necessary to make other statements not misleading, considering the circumstances under which the statements were made.

    (b)   It is an "unfair claim settlement practice" and violation of Chapter 542 for an insurer to engage in the following:

        (i)   Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear; and/or,

        (ii)   Compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.

(c)     Defendant Lexington has violated the aforementioned statutory provisions and engaged in unfair claim settlement practices, by:

    (i)     Failing to attempt in good faith to effectuate a fair settlement of the Graysons' claim;

    (ii)    Forcing the Graysons to institute the present cause of action to recover the policy limits, but also all additional actual damages beyond the policy limits, all interest, all attorneys' fees, all Court costs, and other such expenses, in an amount that would be substantially more than simply paying the policy limits due under the Lexington policy, in direct violation of the aforementioned provisions of Chapter 542 of the Texas Insurance Code.

(d)     In a lawsuit filed under the aforementioned subchapters of the Texas Insurance Code, Plaintiffs may obtain:

    (i)     The amount of actual damages, plus interest thereon at the rate of eighteen percent (18%) per annum;

    (ii)    On a finding by the trier of fact that Defendant knowingly committed the act(s) complained of, an amount not to exceed three (3) times the actual damages;

    (iii)   Reasonable and necessary attorneys' fees, which are to be taxed as Court costs, along with all other taxable Court costs; and,

    (iv)    Any other relief which the Court deems proper.

(e)     Furthermore, pursuant to Texas Insurance Code § 542.061, the remedies provided under this subchapter are not exclusive, and are in addition to any other remedy provided by statute or at common law.

## COUNT 3—BREACH OF CONTRACT

46.    Linda Grayson would show that she entered into a binding agreement with Defendant for homeowner's insurance and that there existed a meeting of the minds as to the premiums to be paid by Mrs. Grayson, and all actions to be taken by Mrs. Grayson upon suffering a covered loss, and the duties and obligations of Defendant toward Mrs. Grayson.

47.    Defendant breached the contract by failing to pay on a covered claim the amount required to fully compensate the Graysons for their loss.

48.    Defendant's breach has proximately caused the Graysons' damages, to include the policy amount, interest on the policy amount at eighteen percent (18%) per annum, reasonable and necessary attorneys' fees in prosecuting this claim to seek the policy amount, and Court costs.

## VI. DAMAGES

49.    Upon the trial of this case, it will be shown that the Graysons were caused to sustain damages as a proximate result of the actions described above. Mrs. Grayson will request the Court and the Jury to determine the amount of loss that the Graysons have incurred in the past and that they will incur in the future. The Graysons are entitled to have the Jury in this case separately consider certain elements of damages provided by law; to determine the sum of money for each element that will fairly and reasonably compensate Mrs. Grayson for her damages.

50. The Graysons seek attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE ANN. §38.001 (West 2014)(suit for written contract); TEX. INS. CODE ANN. §541.152 (West 2014); TEX. INS. CODE ANN. §542.060(b) (West 2014). All conditions precedent to recover the Graysons' statutory damages and to recover the Graysons' attorney fees pursuant to the aforementioned statutes have been met.

## VII. PRAYER

51.     WHEREFORE, PREMISES CONSIDERED, Plaintiff, LINDA GRAYSON respectfully requests that Defendant be cited to appear and answer, and that on final trial on the merits, Plaintiff have and recover from Defendant the following:

(a)     Actual damages;

(b)     Pre-judgment at the highest legal rate of eighteen percent (18%) per annum;

(c)     Reasonable and necessary attorneys' fees;

(d)     Taxable Court costs;

(e)     Statutory damages in the amount of three (3) times the actual damages;

(f)     Post-judgment interest on the above amounts, compounded annually; and,

(g)     Such other and further relief, general or special, at law or in equity, to which the Court finds Plaintiff justly entitled.

Respectfully submitted,

THE LAW OFFICES OF A. CRAIG EILAND

By: _____

Craig Eiland
State Bar No. 06502380
SDTX No. 9076
Email: ceiland@eilandlaw.com
Old Galveston Square
221 The Strand, Suite 201
Galveston, Texas 77550
Tel: 409.763.3260
Fax: 409-763-8154

ATTORNEY FOR PLAINTIFF

-12-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon counsel for all parties via facsimile transmission and electronic mail, this 29th day of October, 2015.

A.  Craig Eiland